## In re SNITZER.

## SILBERMAN–BECKER CORPORATION v. HUMMEL.

### No. 4745.

Circuit Court of Appeals, Seventh Circuit. Dec. 13, 1932.

Rehearing Denied Jan. 14, 1933.

286

Theodore G. Remer, Lawrence J. West, and Leo Spira, all of Chicago, Ill., for appellant.

Joseph Kamfner and Irving Bilton, both of Chicago, Ill., for appellee.

Before ALSCHULER and EVANS, Circuit Judges, and WILKERSON, District Judge.

ALSCHULER, Circuit Judge.

Appellant secured judgment against bankrupt March 23, 1931. Execution being returned nulla bona, garnishment was sued out, writ served March 28, 1931, and garnishee's answer filed April 3. At this stage petition in bankruptcy against the judgment debtor was filed September 15, 1931.

The bankrupt and the trustee in bankruptcy, contending that the garnishment created no lien under the law of Illinois, petitioned the court to restrain further proceedings in the garnishment suit, insisting that the bankrupt estate, and not the garnishor, was entitled to whatever, if anything, the garnishee owed the bankrupt. The answer to the petition averred that, by the garnishment proceeding, the garnishor, as against other creditors, obtained a lien on whatever funds or indebtedness there was then owing from the garnishee to the judgment debtor, and that this lien, having existed more than four months prior to the bankruptcy, cannot thereby be affected.

The petition was referred to a special master, who reported to the court that whether or not the garnishor acquired such a lien was dependent upon the law of the state of Illinois, and that the law of Illinois upon this subject was settled by the decision of the Supreme Court of Illinois in the case of Bigelow et al. v. Andress et al., 31 Ill. 322, under which garnishment created no lien. He recommended to the court that permanent restraining order against garnishor be granted. The court approved the report of the master, and enjoined the garnishor from further prosecuting the garnishment action.

Bigelow v. Andress being the sole authority for the conclusion that under the law of Illinois garnishment conferred no lien, we give some consideration to that case. It was a suit in chancery to restrain a garnishee, served in an attachment suit, from incumbering or disposing of a stock of goods alleged to have come into his possession, but which it was alleged had been fraudulently conveyed to him by the defendant in the attachment suit, and which the garnishee was about fraudulently to dispose of, and asked for a restraining order on the garnishee, and for a receiver to take the property and hold it pending the determination of the attachment. Sustaining a demurrer to the bill, the court dismissed it, and the sufficiency of the bill was the issue on the appeal.

What the Supreme Court conceived to be the precise questions for its determination is thus stated in the first paragraph of the opinion: "This record presents two questions for determination. First, whether by commencing an attachment suit, and the service of garnishee process, the attaching creditor acquires such a lien upon property in the hands of the garnishee, as will authorize a court of equity to interpose its restraining power, to prevent him from disposing of it before a judgment and execution are had in the proceeding at law. The second is, whether, independent of a lien, the court will entertain a bill to preserve the property, until it can be subjected to a sale on legal process, on the ground, that the garnishee has acquired all of his rights to the property, in fraud of the creditors of his vendor."

It is this definite statement of the questions involved to which the entire opinion is referable. It is thus evident that the question before that court was one of the propriety or right of chancery to deal with property in the hands of a garnishee in an attachment proceeding wherein no judgment had been rendered against the original defendant or the garnishee. The court held that chancery had no such power; that under the statutes of Illinois the garnishment conferred no lien upon specific property in the hands of the garnishee, and gave no right to the garnishor against the garnishee except to obtain judgment against him to the extent that it is ultimately determined he had assets of or was indebted to the original defendant.

The opinion points out the difference between a lien arising from the levy of an attachment upon personal property, and the operation of a garnishment upon the property of the garnishee, showing that, under

the statute, the garnishee has the right to retain any such property in his hands, and to dispose of it, "but only renders him liable on failing to produce it, to satisfy the judgment."

The opinion sufficiently demonstrates that, until judgment is obtained against the garnishee, a court of equity has no power to aid the garnishment proceeding by interfering with property in the garnishee's hands, and applies the well-recognized rule that a creditor may not, before reducing his debt to judgment, resort to equity to assist in its collection.

In the course of the opinion it is said: "If, as we have seen, it is the levy upon the defendant's property which, alone, creates the lien, we are at a loss to perceive how the mere service of a summons on a third person to appear and answer whether he is indebted to, or has effects of the defendant in his possession, can create a lien of any character."

This expression seems to be broader than was necessary in order to decide the question in that case, initially stated by the court to be whether the attaching creditor acquires under a garnishment such a lien as will authorize a court of equity to interpose its restraining power.

If it were the law that by garnishment the garnishor secures no right or advantage which he may hold as against the debtor's other creditors, there would be little purpose in garnishment. But it is manifest from the Illinois decisions that the garnishor does by his garnishment (especially if based on judgment) take unto himself rights and advantages of which no other creditor can deprive him, and in the fruits of which no other creditor may participate.

In Stahl et al. v. Webster et al., 11 Ill. 511, the court said: "The word 'property' embraces money, debts and choses in action of every kind, as well as articles that can be seen and handled. A debt due from another is as much property, and as effectually attached, when the person owing it has been summoned as garnishee, as is any visible species of property upon which the attachment may have been levied."

In Nesbitt v. Dickover, 22 Ill. App. 140, it is stated: "We think the service of the garnishee process worked an appropriation from that time, of so much of the claim of the judgment debtor against the appellants as the judgment, interest and costs amounted to. From that time the garnishees could not voluntarily free themselves from the pay-

ment of the claim of the garnisheeing creditor, and the notice was only a legal demand from the day of its service, and compelled the appellants to respond to them for all the money in their hands, owing to appellee, not already appropriated by them, or which they had not become bound to pay in some other manner. From and after the date of the service of this garnishee process the appellee was not, in a legal sense, indebted to the appellants for the sum covered by this judgment. The courts in this State have always held that the garnishee must respond for every species of property in his hands, at the time of the service of the writ, belonging to the original debtor, and all moneys owing him at that time."

This was referred to with approval in Mueller v. Kroll, 207 Ill. App. 306, and also in Nelson v. Urban, 236 Ill. App. 447.

In Ham v. Peery, 39 Ill. App. 341, the court said: " * * * the attaching creditor can make a demand that would be availing only by suing out the writ and causing it to be served on the garnishees, and from the time of service the money, then in their hands, belonging to the debtor in attachment, becomes subject to the legal claims of the attaching creditor against such debtor."

This was reaffirmed in Bank of Montreal v. Clark, 108 Ill. App. 163.

In Roche v. Rhode Island Insurance Ass'n, 2 Ill. App. 360, the court went so far as to say that by service of the garnishment writ a lien attached upon the debt owed by the garnishee to the debtor.

In Smith et al. v. Clinton Bridge Co. et al., 13 Ill. App. 572, it was said: "Where the writ is served upon a debtor as a garnishee it must create a qualified lien, or have the effect of a qualified appropriation of the indebtedness by the law, to the objects and purposes of the attachment that is binding alike upon the defendant, the garnishee and third parties; otherwise the garnishment might always be rendered wholly nugatory and futile, by the payment or assignment of the debt."

Buckingham v. Shoyer, 86 Ill. App. 364, states: "The funds in the hands of the garnishees were in custodia legis immediately on the service of the writ on the garnishees, and from that time the garnishees held the funds as agents of the court."

In Pine Tree Lumber Co. v. Stock & Grain Exch., 238 Ill. 449, 87 N. E. 539, 541, speaking of the purpose of garnishment, the court said: "The service of a garnishee summons upon a debtor by the defendant, while not in all respects the same thing as levying

an attachment writ upon the defendant's tangible property, is intended to accomplish the same purpose, and possesses several points of similarity. * * * The service of a garnishee is designed to secure satisfaction of the plaintiff's demand, by bringing the garnishee before the court and ordering him to pay what he owes to the defendant, or enough thereof to satisfy the plaintiff's demand, to the plaintiff."

In Becker v. Illinois Cent. R. Co., 250 Ill. 40, 95 N. E. 42, 43, 35 L. R. A. (N. S.) 1154, the court said: "By the service of the garnishee summons in Missouri Miller acquired a contingent or inchoate lien upon the debt * * *;" and the garnishment law of Missouri does not materially differ in this respect from that of Illinois.

The general rule is well expressed in a quotation from 28 C. J. p. 252, § 350: "It would seem that unless the statutes expressly so provide the service of a writ or summons in garnishment or trustee process does not in the strict sense create a lien upon any specific property in the hands of the garnishee or trustee but gives rise only to a contingent personal liability to respond therefor to any judgment which may thereafter be recovered by plaintiff against defendant. However, the right acquired by plaintiff is frequently described as a lien, or an equitable lien, or quasi lien, or as an inchoate lien, which must be perfected by judgment against the garnishee; more accurately, it is a specific right conferred upon plaintiff to the indebtedness or property for the payment of his claim over and above mere general creditors. But it constitutes a lien in the sense that so long as it continues and the garnishee seeks to preserve his own rights he cannot pay to the principal defendant nor can the principal defendant collect the debt from him."

We think it is plain that under the law of Illinois the service of a garnishment writ after judgment thenceforth appropriates to the garnishor, to apply on his judgment, the property of or owed to the judgment debtor in the hands of or owed by the garnishee.

It seems to have been assumed below that the garnishor's rights must be measured by section 67f of the Bankruptcy Act, section 107 (f), 11 U. S. C. (section 107 (f), 11 USCA), which provides that "all levies, judgments, attachments, or other liens, obtained through legal proceedings against a person who is insolvent, at any time within four months prior to the filing of a petition in bankruptcy against him, shall be deemed null and void in case he is adjudged a bankrupt."

This section specifies only in what case a lien thus secured is null and void. But it has no application at all where a lien or superior right, however created, attaches more than four months before the bankruptcy. If, in general, there is asserted a lien or superior right attaching more than four months before the bankruptcy, whether through legal proceedings or otherwise, it is section 64b of the Bankruptcy Act, section 104 (b), 11 U. S. C. (section 104 (b), 11 USCA), which is applicable, and this section gives protection to "debts owing to any person who by the laws of the States or the United States is entitled to priority."

In the section last named the word "lien" is not employed at all, and under it whatever superior right a garnishor may have secured under a state law by virtue of the garnishment, be that right called lien, qualified lien, inchoate lien, equitable lien, secured claim, priority, or what not, if it is in fact a debt which by the laws of the state "is entitled to priority," the Bankruptcy Act affirmatively awards it that priority.

If this garnishment had attached less than four months before the bankruptcy, is it likely that it would be contended that section 67f did not have application because the garnishment did not create a "lien" as specified in that section? Certainly not. It would then have been maintained, and properly so, that any sort of superior right in assets of the bankrupt, secured through legal proceedings in the state courts, must give way if falling under the provisions of that section.

Such a narrow and restricted meaning of the word "lien" as appellee contends for would greatly circumscribe and embarrass the operation of the Bankruptcy Act, since no superior right so secured, if it amounts to less than a lien in its strictest and most exclusive sense, could be voided under that section.

We believe section 67f should be liberally and broadly construed in order to bring within its terms liens of every kind, character, and degree, however denominated, which attached within four months preceding bankruptcy, and whereby a creditor secured advantage, great or small, over the bankrupt's general creditors in any property of the bankrupt.

The lien or advantage of this creditor, secured by garnishment, having attached more than four months before the bankruptcy, and no cause appearing upon this record why it should be vacated, it follows that the order

herein appealed from is erroneous, and should be, and it hereby is, reversed, with direction to dismiss appellee's petition.